**327.15**

ORIGINAL

NO. _07-14-00114-CR_

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

[APPELLANT]

Petitioner

v.

THE STATE OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 24 2015

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS

MAR 26 2015

Abel Acosta, Clerk

242 Petition in Cause No. _B3492-1305_ from the
Judicial District Court of _CASTRO_ County, Texas and
Case No. 07-14-00114-CR in the Court of Appeals for the Seventh
Supreme Judicial District of Texas

## PETITION FOR DISCRETIONARY REVIEW

The issue in this case was not whether the assailant intended to assault Israel Ramirez, Jr. The issue was whether he was Reckless or criminal negligent in causing injury to the child the objected-to evidence did nothing to further the determination of the controlling issue. The introduction of extraneous conduct to jury is "inherently prejudicial" and hence harms the defendant because it require the defendant to defend against not only the offense charged but also his character.

NO. _07-14-00114-CR_

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

---

[APPELLANT]

Petitioner

v.

THE STATE OF TEXAS

Petition in Cause No. _B3492-1308_ from the
_242nd_ Judicial District Court of _Castro_ county, Texas and
Case No. 07-_14-00114_ -CR in the Court of Appeals for the Seventh
Supreme Judicial District of Texas

---

**PETITION FOR DISCRETIONARY REVIEW**

TO THE HONORABLE JUDGES OF THE COURT OF
CRIMINAL APPEALS OF TEXAS:

[APPELLANT] petitions the Court to review the judgment affirming his conviction

for the _Third_ degree felony of _Injury to Child, Elderly or Disabled ind,_ and punishment assessed at _two(2) years_

years confinement in the TDCJ-ID.

4

**STATEMENT REGARDING ORAL ARGUMENT**

The grounds for review set forth in this petition concern _Seventh Court of Appeal_

Oral argument would be helpful to the Court in determining an important

constitutional issue, i.e., _Jury charge error, Error in the admission Identification_ _of Evidence_

**STATEMENT OF THE CASE**

The issues in this case concern _Victime, time Appellent wasnot in Jury charge_ _town_

**STATEMENT OF PROCEDURAL HISTORY**

Petitioner was charged by indictment with the _State 1st_ degree felony offense of

_INjury to A child_ . The jury convicted Petitioner of the offense of

_INjury to A child_ _Reckless Criminal negligence_ and sentenced Petitioner to a term in the Texas Department of Criminal

Justice – Institutional Division for a period of _two years_ . Petitioner appealed

the conviction to the Seventh Court of Appeals.

The Seventh Court of Appeals rendered its decision affirming Petitioner's conviction

on _Injury to a child_ _with Criminal negligence_. No motion for rehearing was filed by Petitioner.

**QUESTIONS FOR REVIEW**

1. _The Trial Court committed error in submitting A charge Jury charge error_
2. _Elements of Offense_
3. _Error In the Admisson of Evidence_
4. _Identification_

**ARGUMENT**

_Unfair prejudice_

**PRAYER FOR RELIEF**

_PLAYER For Relief is Remand The case For new Reverse the trial courts Trial or other Judgment or acquital Relief that maybe Entitl_

WHEREFORE, PREMISES CONSIDERED, Petitioner prays that this Court grant this

petition, and upon reviewing the judgment entered by the Seventh Court of Appeals, reverse

the judgment of the Court of Appeals and remand this cause with instructions to

*Enter a judgment of acquittal or In the alternative Remand the case for new trial Applicant prays for such other relief as appellant may be entitled to herein be granted*

Respectfully submitted,

*Edward Ewing*

[APPELLANT], PETITIONER

## Certificate of Service

I hereby certify that a true copy of the foregoing instrument was provided to all counsel of record in this matter on the ___17___ day of ___March___, 20_15_, in accordance with the Texas Rules of Appellate Procedure.

State Prosecuting Attorney
P. O. Box 12405
Austin, Texas 78711

_____County District Attorney

*Edward Ewing*
Petitioner

6



## In The
## Court of Appeals
## Seventh District of Texas at Amarillo

No. 07-14-00114-CR

EDWARD EWING, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 242nd District Court
Castro County, Texas
Trial Court No. B3492-1308, Honorable Edward Lee Self, Presiding

March 2, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, Edward Ewing, was indicted and convicted of the offense of injury to a child.[1] The jury subsequently sentenced him to serve two years in a State Jail Facility (SJF). Appellant brings forth four issues for our consideration. Appellant's first two issues attack the sufficiency of the evidence to establish appellant's guilt beyond a reasonable doubt on the issue of identity and culpable mental state. The third issue contends that the trial court committed error in submitting a charge that contained

---

[1] See TEX. PENAL CODE ANN. § 22.04(a)(3) (West Supp. 2014).

criminal negligence as the culpable mental state. Finally, appellant contends that the trial court erred in allowing evidence of an extraneous offense to come before the jury. Disagreeing with appellant, we will affirm his conviction.

## Factual and Procedural Background

On July 30, 2013, Nicole Espinosa went to the city park in Dimmit, Texas. Accompanying her were her two infant children, Maliaki Ramirez and Katelyn Ramirez, and her cousin, Natalie Ramirez. Upon arrival at the park, they were joined by her boyfriend and the father of her children, Ismael Ramirez, and her brother, Ruben Espinosa. The group stayed at the park a short time. As the party headed home down an adjacent street, they were approached by appellant and his girlfriend, Maribell Ramirez. According to Nicole, appellant walked up to Ismael and stated, "Remember me?" and punched Ismael in the face causing him to fall to the ground, unconscious. At the time appellant approached Ismael and struck him, Ismael was pushing a stroller that Maliaki was riding in. Upon being struck by appellant, Ismael fell and the force of the fall caused the stroller to flip on its side. When this occurred, Maliaki struck his head and face on the ground. Appellant, according to the trial testimony, subsequently fled the scene.

The police were called and, upon arrival, called for an ambulance to take Ismael to the hospital for treatment. The child, Maliaki, was taken home but, when Nicole saw that he had suffered a scraped face and a bruised forehead, she decided to take him to the hospital to be checked out. A police officer was still at the hospital with Ismael when Nicole arrived with Maliaki. Upon seeing Maliaki's injuries, Officer Sky took pictures of his face and forehead.

2

At appellant's trial, he was identified as the individual who assaulted Ismael and, as a result of the assault, caused the stroller to flip over causing the injury to Maliaki. Appellant was identified by Nicole and her brother, Ruben Espinosa. Further, Nicole testified that, at the time of the incident in question, appellant was wearing a white muscle shirt and blue jean shorts. During the trial, there was conflicting testimony given about when Nicole, her cousin, and the children went to the park and at what time they exited the park. However, all witnesses were consistent about two aspects: that appellant was the assailant and that it was dark or getting dark when the assault occurred.

Appellant produced his girlfriend, Maribell Rivera, and his sister, Darlene Vidal, as alibi witnesses. Rivera said she was with appellant earlier in the day when she picked him up at the jail. According to Maribell, she picked appellant up at 1:00 p.m. and took him to his cousin's house. Further, Maribell said she saw him later in the afternoon when he came to her home to pick up his clothing. Sometime around dark, appellant left her home. She denied seeing him any further. Maribell denied seeing Nicole or Ismael at any time that day. On cross-examination, Maribell testified that appellant was wearing a white tank top and some shorts when she saw him on July 30.

Darlene testified that she went to Dimmit and picked appellant up. According to her testimony, she picked up appellant at around 6:00 p.m. and took him back to Plainview. After visiting at her mother's home in Plainview, appellant accompanied her to her apartment where he spent the night.

After the conclusion of the evidence, the trial court presented a proposed court's charge to the parties. Upon reviewing the proposed charge, appellant objected to the

3

inclusion of the "lesser-included" mental state of criminal negligence in the court's proposed charge. The trial court overruled the objection and the jury was charged under both reckless and criminal negligence mental states. The charge contained the proper definitions of both mental states and an application paragraph applying both mental states. The jury ultimately found appellant guilty of having committed the offense "recklessly."

Appellant has perfected his appeal and brings forth issues contesting the sufficiency of the evidence as to two particulars, the perceived error in charging the jury with the alternate mental state of criminal negligence, and the admission of extraneous evidence testimony. We will affirm the judgment of conviction.

## Sufficiency of the Evidence

Appellant's first complaint regarding the sufficiency of the evidence is directed at the identification of appellant as the assailant. In his second sufficiency issue, appellant contends that the evidence was insufficient to prove the reckless mental state found by the jury's verdict.

### Applicable Law and Standard of Review

To prove the indicted offense of injury to a child, as indicted, the State had to prove that: 1) appellant, 2) recklessly, 3) by an act, 4) caused a child, who was 14 years of age or younger, 5) bodily injury. *See* TEX. PENAL CODE ANN. § 22.04(a)(3).[2] The penal code defines the culpable mental state of reckless as:

---

[2] Further reference to the Texas Penal Code will be by "section ____" or "§ ____".

4

(c) A person acts recklessly, or is reckless, with regard to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

§ 6.03(c) (West 2011). "Bodily injury" means physical pain, illness, or any impairment of physical condition. § 1.07(a)(8) (West Supp. 2014).

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks,* 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson.*" *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State,* 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

5

Injury to a child is a result-oriented offense that requires a mental state that relates not to the specific conduct but to the result of that conduct. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Analysis

Appellant's first complaint is that the evidence is insufficient to prove the identity of appellant as the assailant that struck Ismael. The crux of appellant's argument is summed up by the opening sentence of his brief: "The evidence at trial concerning the identity of appellant as the assailant was contradictory at best, and the jury could not reasonably infer that appellant was the assailant." This is so, according to appellant, because appellant was incarcerated until the day of the assault and, therefore, Nicole could not have seen him around town as she testified. Further, appellant's sister testified that appellant was in Plainview at the time of the incident. In essence, appellant is contending that there was inconsistent and conflicting testimony about appellant being the assailant.

We agree that there were inconsistencies in the testimony surrounding how many times Nicole had the opportunity to view appellant prior to the incident. Further, the record is clear that appellant's sister did, in fact, testify that appellant was in Plainview at the time of the assault. However, the record further reveals that two witnesses identified appellant as the assailant. Nicole testified that she was within a foot or so of Ismael at the time of the assault. Ruben said he was within five feet or so of Ismael when appellant struck him.

6

We begin with the well-established principle that the appellate court will not position itself as a thirteenth juror to disregard, realign, or reweigh the evidence. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988) (en banc). The law is equally clear that the resolution of conflicts and inconsistencies in the evidence is the province of the jury as the trier of fact. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) (op. on reh'g). Because resolution of conflicts or inferences therefrom lies within the exclusive province of the jury, it may choose to believe all, none, or some of the evidence presented to it. *See Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995) (en banc). The jury is also the exclusive judge of the credibility of witnesses. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994) (en banc) (per curiam).

The jury heard the conflicting evidence and decided the issue against appellant. Two witnesses identified appellant as the assailant. Nicole testified that appellant was dressed in a white top and blue shorts, while Maribell also testified that appellant was dressed in a white top and blue shorts on the day when the assault took place. We conclude that this is sufficient evidence for a rational jury to conclude that appellant was the assailant. Appellant's contention to the contrary is overruled.

Appellant next contends that the evidence is insufficient for the jury to find that the injury to the child occurred with the required "reckless" culpable mental state. Initially, we restate that injury to a child is a result-oriented offense and the State, to discharge its burden, had to prove that appellant caused the child's bodily injury with the required reckless criminal intent. *See Williams*, 235 S.W.3d at 750. To show that the alleged conduct was of such a nature to support the reckless culpable mental state, the

7

State had to show that appellant consciously disregarded the risk his conduct created. *See id.* at 751. It is not enough to merely lack foresight, to act stupidly, irresponsibly, thoughtlessly, or with ordinary carelessness, because, as serious as the consequences of these actions may be, they do not suffice to constitute criminal recklessness. *See id.* Rather, what is required is that appellant actually foresees the risk involved but consciously decides to ignore it. *See id.* at *751-52.* It is the combination of an awareness of the magnitude of the risk and the conscious disregard that is crucial. *See id. at 752-53.* We examine the question of whether the act involves a substantial and unjustifiable risk by examining the facts and circumstances from the viewpoint of the appellant at the time the events transpired, without the prism of hindsight. *See id.* at 753. The question of whether the conduct of appellant involves an extreme degree of risk is determined by the conduct itself and not by the resultant harm. *See id.*

The *Williams* court points out that, when an appellate court is examining the issue of the culpable mental state of recklessness, we must examine the appellant's conduct to determine whether:

1) the alleged act or omission, viewed objectively at the time of its commission, created a 'substantial and unjustifiable' risk of the type of harm that occurred;

2) that risk was of such a magnitude that disregard of it constituted a gross deviation from the standard of care that a reasonable person would have exercised in the same situation . . . ;

3) the [appellant] was consciously aware of that 'substantial and unjustifiable' risk at the time of the conduct; and

4) the [appellant] consciously disregarded that risk.

*Id.* at 755-56.

In analyzing these factors we must review the testimony. First, Ismael was pushing a stroller with Maliaki in it. Second, there is nothing in the record that would lead us to conclude that appellant could not see Ismael pushing the stroller with Maliaki in it. The testimony reflects that appellant walked up to Ismael directly and stated "Remember me?". This buttresses our conclusion that appellant was looking at, and looking for, Ismael specifically. Having said that, the record supports the inference that appellant was aware that the child was in the stroller Ismael was pushing. Having concluded that appellant was aware of the presence of the child, the evidence supports the proposition that the act of striking Ismael created a substantial and unjustifiable risk of exactly the harm that occurred; that is to say, the stroller being turned over with Maliaki in it. See id. Further, that risk was of such a magnitude that to disregard it was a gross deviation from the standard of care a reasonable person would have exercised. See id. Appellant clearly intended to cause significant harm to Ismael. This is demonstrated by the force of the punch he delivered. Ismael was knocked down and was unconscious for a period of time. In so doing, with knowledge of Ismael's pushing a stroller with a child in it, appellant was consciously aware of the substantial and unjustifiable risk of injury to the child. See id. Additionally, the record reflects that as appellant fled the scene, his girlfriend stated, "Babe, the baby." Appellant then turned back around and tried to touch Maliaki. It is of note that appellant made no comment about "What baby" or anything indicating he was not fully aware of the baby being present. Based upon this evidence, we conclude that appellant chose to disregard the risk to the child. Accordingly, we find that the evidence is sufficient to satisfy the requirement that appellant acted with the requisite "reckless" criminal intent. See § 6.02(c); Williams, 235 S.W.3d at 755-56. Appellant's contention to the contrary is

9

overruled. Having overruled appellant's issues regarding the sufficiency of the evidence, we will now consider his remaining issues.

## Charge Error

Appellant next contends that the trial court committed reversible error when it submitted the case under an alternative theory of criminal negligence. Appellant couches his argument in terms of a lesser-included offense that was neither requested by any party nor sustainable under the facts of the case. In reviewing the foregoing section of this opinion, it is easily recognizable that the issue of the culpable mental state of appellant, at the time he assaulted Ismael, was a pivotal question before the jury. In an attempt to properly frame the evidence for the jury's consideration, the trial court inserted the definition of criminal negligence in the court's charge. Subsequently, the trial court placed an application paragraph applying the culpable mental state of criminal negligence in the charge. Appellant now challenges the actions of the trial court in placing criminal negligence into the charge.

Initially, we observe that injury to a child may be committed, as to the culpable mental state element, in one of four ways: intentionally, knowingly, recklessly, or with criminal negligence. *See* § 22.04(a). As between recklessly or with criminal negligence, recklessly has a higher degree of culpability. *See* § 6.02(d). Pursuant to article 37.09 of the Texas Code of Criminal Procedure, "An offense is a lesser included offense if: (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission." TEX. CODE CRIM. PROC. ANN. art. 37.09(3) (West 2006). Injury to a child by criminal negligence is a lesser-included offense of injury of a child by recklessness. *See Wortham v. State*, 412 S.W.3d 552,

10

555 (Tex. Crim. App. 2013). Accordingly, the trial court did not err in including the lesser-included charge of injury to a child by criminal negligence.

Even were we to say that submission of the lesser-included offense was error, we are still not able to sustain appellant's argument. First, the jury rejected the lesser-included offense when it found appellant guilty of recklessly causing injury to a child. Second, appellant's argument on harm is nothing more than a recasting of his argument regarding the sufficiency of the evidence on any culpable mental state. We have rejected that argument and do not find it persuasive under a harm analysis for a perceived error in charging the jury on a lesser-included offense. We overrule appellant's issue.

## Extraneous Offense

Appellant's final argument is that the trial court committed reversible error when it allowed testimony that he had made prior threats against Ismael. The testimony at issue occurred during Ismael's testimony. He testified that, when he and appellant were incarcerated in the Bailey County jail, appellant threatened to whip him when they got out of jail. Appellant objected to the evidence on the basis that the testimony was not relevant and, if relevant, the probative value was outweighed by unfair prejudice. *See* TEX. R. EVID. 401, 402, 403.[3]

When addressing issues relating to the trial court's admission of evidence, the abuse of discretion standard applies. *See Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009). A reviewing court applying the abuse of discretion standard should

---

[3] Further reference to the Texas Rules of Evidence will be by reference to "Rule ____."

not reverse a trial judge's decision that was within the zone of reasonable disagreement. *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996). Additionally, an appellate court will review the trial court's ruling in light of what was before the trial court at the time the ruling was made. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). In the absence of findings of fact and conclusions of law, the trial judge's decision will be sustained if it is correct on any theory of law applicable to the case. *See State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000) (en banc).

For purposes of our analysis, we are assuming that appellant's objections go to Rules 401, 402, 403, and 404(b). Rule 401, 402, 403, and 404(b). Rule 401 provides that any evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable is relevant. Rule 401. The evidence at issue squarely goes to a contested matter. Recalling that appellant denied the fact that he struck Ismael, claiming to be in Plainview when the assault occurred, the prior threat impacts the veracity of that testimony by showing a motive for an attack on Ismael. As such, this testimony is relevant on the issue of identity and, accordingly, admissible. *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003) (citing *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (holding evidence of other crimes, wrongs, or acts may be admissible to prove identity or intent, to establish motive, or to show opportunity or preparation)). Inasmuch as the testimony was relevant to prove a matter of consequence, separate and apart from character conformity, the admission of the evidence did not violate Rule 404(b). *See id.*

12

However, this is not the end of our inquiry for appellant also contends that, even if the evidence was otherwise admissible, the probative value of such evidence was outweighed by the danger of unfair prejudice. *See* Rule 403. The following factors are taken into consideration when undertaking a Rule 403 analysis: (1) the inherent probative force of the proffered evidence; (2) the proponent's need for that evidence; (3) any tendency of the evidence to suggest decision on an improper basis; (4) any tendency of the evidence to confuse or distract the jury from the main issues; (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). Rule 403 favors admission of relevant evidence and we presume that relevant evidence will be more probative than prejudicial. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). In keeping with this presumption of admissibility of relevant evidence, trial courts should favor admission in close cases. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007) (citing *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g)).

A review of the *Gigliobianco* factors yields the following observations. First, the probative value of the evidence, while not great, was not so small as to suggest against the admission of the testimony. This is highlighted by the statement made by appellant immediately before striking Ismael: "Remember me?". Appellant presented two witnesses who both testified that appellant was not in Dimmit at the time of the attack. This evidence providing motive for the attack was important to the State to show the

13

prior animus between appellant and Ismael and, thus, attacking appellant's purported alibi defense. From our view of the evidence, the testimony regarding the prior threat was not so inflammatory as to suggest the jury reached its decision on an improper basis nor does it appear the jury gave that testimony any undue weight. The presentation of the evidence took a minimal amount of time and did not have the inherent propensity to confuse the issues in the trial. The result of the application of the considerations set forth in *Gigliobianco* leads to our conclusion that the trial court did not err in overruling appellant's objection to the testimony at issue. *See Gigliobianco*, 210 S.W.3d at 641–42. Appellant's issue to the contrary is overruled.

## Conclusion

Having overruled appellant's issues, the trial court's judgment is affirmed.

Mackey K. Hancock
Justice

Do not publish.

14

Edward Ewing # 1416478
Formby Unit
895 CR 44
Dilworth Texas 79029

AMARILLO TX 791
13 MAR 2025 PM 2 L

Abel Acosta
Clerk
Court of Criminal Appeals
PO BOX 12308
Capitol Station
Austin Texas 78711

